BANKERS TRUST COMPANY, Appellee,

v.

FIDATA TRUST COMPANY NEW YORK f/k/a Bradford Trust Company, Appellant,

and General Growth Limited Partnership f/k/a General Growth Properties, Appellee.

No. 89–657.

Supreme Court of Iowa.

March 21, 1990.

Louis J. Maione of Maione & Collins, New York City, and Steven M. Augspurger of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellant.

Joseph G. Van Winkle of Gamble, Riepe, Webster, Davis & Green, Des Moines, for appellee Bankers Trust.

Jay Eaton and John F. Lorentzen of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellee General Growth.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, SNELL and ANDREASEN, JJ.

SCHULTZ, Justice.

The principal issue in this case is whether the nonresident defendant had sufficient minimum contacts with Iowa to subject it to the jurisdiction of the courts of this state. An additional issue is whether defendant consented to jurisdiction in Iowa. The trial court overruled defendant's motion to dismiss for lack of personal jurisdiction. We reverse and remand.

In 1983 General Growth Limited Partnership (General) decided to offer its shareholders subscription rights to additional shares. It hired Bankers Trust Company (Bankers) to act as its agent for the rights offering. Both General and Bankers have their principal places of business in Des Moines, Iowa. Bankers engaged Bradford Trust Company of New York, now known as Fidata Trust Company New York (Fidata),[1] to act as its New York agent for the acceptance of hand deliveries of these sub-

---

1. For convenience and clarity, we will refer to Bradford Trust Company as Fidata.

scriptions. Each company agreed to hold harmless and indemnify the party acting as its agent from liability for good faith performance. This provision does not apply to acts performed in bad faith or with gross negligence.

A Maryland shareholder sustained a loss when its subscription to additional shares was misdelivered in New York. It brought an action and recovered damages against various defendants, including a $76,000 judgment against Fidata. Fidata commenced an action against Bankers for indemnification in the United States District Court for the Southern District of New York. While this action was pending, Bankers brought this action for a declaratory judgment and breach of contract, joining General and Fidata as defendants. Fidata was personally served in New York pursuant to Iowa Rule of Civil Procedure 56.2. General filed a counterclaim against Bankers and a cross-claim against Fidata. In its amended answer and later by a motion to dismiss, Fidata claimed that it did not have sufficient minimum contacts with Iowa to give the Iowa courts jurisdiction.

I. *Minimum contacts.* Bankers bases its claim of personal jurisdiction in Iowa on its service of Fidata under rule 56.2.[2] This rule only requires that the out-of-state defendant have minimum contacts with Iowa and further permits Iowa jurisdiction to the extent allowed by the federal constitution. *Al–Jon, Inc. v. Garden St. Iron and Metal, Inc.*, 301 N.W.2d 709, 711 (Iowa 1981) (citing *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980)). We indicated in *Al–Jon* that the issue is whether personal jurisdiction over the nonresident defendant offends the due process clause of the fourteenth amendment to the United States Constitution. 301 N.W.2d at 711.

■ The principles of due process as applied to a forum state's claim of jurisdiction over a nonresident require an examination of the facts of each case to determine whether the assertion of personal jurisdiction satisfies "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940)). The due process clause protects an individual's liberty interest in not being subject to the binding judgment of a forum with which the defendant has established no meaningful contact, ties or relation. *Id.* 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104.

■ The minimum contacts "test" is meant to insure the fairness and reasonableness of requiring a nonresident to defend a law suit in the forum state. *See id.* at 317, 66 S.Ct. at 158, 90 L.Ed. at 102. In determining whether the contacts were sufficient we consider:

(1) the quantity of the contact;

(2) the nature and quality of the contact;

(3) the source and connection of the cause of action with these contacts;

(4) the interest of the forum state; and

(5) the convenience of the parties.

*Larsen*, 296 N.W.2d at 788. The first three factors are the most important. *Id.*

■ Here, the trial court overruled Fidata's motion to dismiss by simply concurring "with the reasons set out in the resistances filed in opposition to this motion." The trial court was remiss in its ruling, because the hearing and disposition of a motion involving personal jurisdiction is a special proceeding requiring it to find facts and draw conclusions of law in its decision. *Kagin's Numismatic Auctions, Inc. v. Criswell*, 284 N.W.2d 224, 226 (Iowa 1979). Fidata did not, however, seek an enlargement of the ruling pursuant to Iowa Rule of Civil Procedure 179(b). We, therefore, presume the court decided the facts necessary to support its decision in Bankers' favor. *Brunner v. United Fire & Casualty Co.*, 338 N.W.2d 151, 152 (Iowa 1983).

---

**2.** Rule 56.2 reads in part:

Every corporation ... that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation ... amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of The United States.

In a proceeding involving personal jurisdiction, the court accepts the allegations of the petition as true. *Larsen,* 296 N.W.2d at 787. "Plaintiff has the burden to sustain the requisite jurisdiction, but when a prima facie case is established, defendant has the burden to produce evidence to rebut or overcome it." *Id.* As the trial court's findings have the force and effect of a jury verdict, we must assume the trial court rejected Fidata's evidence. Consequently, the question is whether the facts presented here, when viewed in a light most favorable to Bankers, support the trial court's conclusion that it had submitted to the jurisdiction of the Iowa court.

Bankers advances two theories to support the grant of personal jurisdiction over Fidata in Iowa. First, it claims Fidata's activities in the subscription offering established minimum contacts with this state even though Fidata was not physically present in Iowa. Second, it argues that Fidata's alleged physical presence within the state at other times permits the Iowa court's exercise of in personam jurisdiction.

We first examine the evidence of contacts arising from the subscription offering. In its resistance to the motion to dismiss, Bankers submitted the deposition of the former Fidata officer who was in charge of the New York operation in 1983 and the affidavit of its own corporate officer at that time. In addition, the court had Bankers' petition which included the agreement between the parties. Under the agreement and according to the two officers, Fidata was to act as a depository for the subscription rights in New York. It received, examined and photographed the material and then compiled a report which it sent to Des Moines. Fidata would then call to inform Bankers of the contents of the package it was sending. Fidata had no duties in Des Moines, and its only contact with Bankers was by telephone and mail.

It is undisputed that Fidata was employed in New York, performed its duties in New York and that none of its employees or representatives had physical contact with the state of Iowa. Bankers urges, however, that the telephone calls and the mailings were vital to the subscription offer in Iowa and constituted minimum contacts sufficient to trigger jurisdiction. The nonresident corporation's physical presence within the forum state is not essential to a finding of sufficient minimum contacts; contacts by telephone or mail may suffice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528, 543 (1985); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 200–01, 2 L.Ed.2d 223, 226 (1957) (jurisdiction found in California when nonresident insurance company solicited California resident to transfer insurance, transfer was accepted in California, and policy mailed to policy holder in California); *Hager v. Doubletree,* 440 N.W.2d 603, 606–09 (Iowa 1989) (jurisdiction found in Iowa when nonresident agents conducted business with Iowa insurance company by mail and telephone).

When we examine the mail and telephone contacts, we consider not only the quantity of the contacts but their nature and quality. It is critical that Fidata's conduct in Iowa must be such that it should have reasonably anticipated being haled into state court. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). The Supreme Court held that accepting the benefits of affiliation with a nationwide organization doing business in the forum state and sending magazines into a state are significant activities. *Burger King,* 471 U.S. at 479–80, 105 S.Ct. at 2186, 85 L.Ed.2d at 545; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781, 104 S.Ct. 1473, 1481–82, 79 L.Ed.2d 790, 801–02 (1984).

When we analyze the type of connections that Fidata had with Iowa, we conclude they are not the type that would have led Fidata to believe it would be haled into court. While the quantity of the communications from Fidata to Iowa was plentiful, the nature and quality of these contacts was trifling. The phone calls were to notify Bankers that the subscriptions were on the way or concerned activities in New York. The mailing was merely a ministerial act. The affiant stated that Fidata's

"only responsibilities were to collect and relay the packages of stock certificates it had collected as the New York drop." Fidata was not attempting to conduct business in Iowa; it performed the contract in New York.

The incident that gave rise to this suit was the misdelivery of stock subscriptions in New York by a private carrier. This mishap was unrelated to Fidata's duty to mail subscription issues that it had received to Des Moines. Importantly, litigation on the very issue in question was concluded in the federal court in New York, and the parties are merely awaiting a decision in that forum.

When we apply the first three factors announced in *Larsen,* we conclude that only the quantity of the contacts with Iowa were sufficient. The nature and quality of the contacts and their connection with the source of litigation strongly indicate that Fidata could not have anticipated that these activities, having their origin in New York, would have placed it before the Iowa court. We believe that the grant of jurisdiction in the Iowa court does not comport with fair play and substantial justice.

■ We next turn to Bankers' second theory that Fidata submitted to the personal jurisdiction of the Iowa court by its in-state activities that are unrelated to this particular subscription offering.

■ It has been recognized that the minimum contacts requirement will be satisfied where a nonresident defendant's activities within the forum state are sufficiently substantial or continuous and systematic. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 447, 72 S.Ct. 413, 419, 96 L.Ed. 485, 493 (1952). The Supreme Court stated:

> Thus where the defendant "deliberately" has engaged in significant activities within a State or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because of his activities are shielded by "the benefits and protections" of the forum's law it is presumptively not unreasonable to

require him to submit to the burdens of litigation in that forum as well.

*Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2184, 85 L.Ed.2d at 543 (citations omitted). Under these circumstances the nonresident corporation's forum contacts need not be related to the cause of action. *Toro Co. v. Ballas Liquidating Co.,* 572 F.2d 1267, 1270 (8th Cir.1978).

In *Perkins* the manager of a Philippine corporation conducted the company's wartime activities in Ohio using banks and transfer agents, holding director's meetings and keeping company files. The corporate activities in the forum state were so extensive that it could be said the corporation in fact was present in that state. Similarly, a federal court determined that due process principles are not violated by a state court ruling that it had personal jurisdiction over a nonresident defendant, who (1) solicited business within the state using manufacturers' representatives and advertising, (2) billed customers directly, (3) distributed products to several points within the state, and (4) maintained regular contact with state customers. *Peanut Corp. of Am. v. Hollywood Brands, Inc.,* 696 F.2d 311, 314 (4th Cir.1982).

In contrast, the Supreme Court has held that there was not sufficient evidence of a continuous and systematic business contact when a Columbian company's chief executive negotiated one contract in Texas, accepted checks from a Texas bank, and had additional contacts with the state such as sending personnel to purchase helicopters and equipment and attend training sessions that were not related to the suit in question. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 418, 104 S.Ct. 1868, 1874, 80 L.Ed.2d 404, 413–14 (1984). The Court said that it was clear that the purchases and related trips, standing alone, were not a sufficient basis for the state's assertion of jurisdiction. *Id.* (citing *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923)).

A federal court has concluded that two visits to the forum state pertaining to

transactions not at issue combined with extensive communications by mail and telephone did not constitute systematic contact. *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica,* 614 F.2d 1247, 1254 (9th Cir.1980). A California court has held that a nonresident purchaser of services was not subject to suit in California when the contract at issue was executed out-of-state, performance was not required in California and the purchaser on four or five occasions in past years had sent employees to the seller's office in California to discuss jobs in progress. *Belmont Indus., Inc. v. Superior Court of Stanislaus County,* 31 Cal. App.3d 281, 288 n. 4, 107 Cal.Rptr. 237, 242 n. 4 (1973). "The occasional act of sending an employee into the state to expedite the services adds nothing to the relationship between petitioner and the state." *Id.*

Bankers notes that its officer's affidavit indicated that it had an ongoing relationship with Fidata's trust accounting department since 1980, paid out approximately $100,000 per year for fees, and that Fidata had come to its Des Moines offices on many occasions to train Bankers' personnel and to provide assistance. Fidata correctly counters that the affiant was not employed at Bankers during this period of time and makes only general statements regarding these services which have nothing to do with the subscription offer in question. Fidata's affidavit suggests that Fidata is but one of a group of subsidiary corporations that are affiliated with a holding company (now Fidata Corporation) and that the subsidiaries perform many different services not related to the subscription service at issue here. It also asserts that the employees present in Iowa were from other subsidiaries.

While Fidata's claims may have merit, it did not ask for the opportunity to cross-examine the affiant to determine specific information concerning these alleged visits. *See* Iowa R.Civ.P. 116. Under these circumstances and for the purpose of this ruling, we will assume that Fidata sent its employees to Des Moines on several occasions between 1980 and 1983 to assist

Bankers on matters other than the subscription offering at issue.

We do not find sufficient evidence that Fidata was in fact present in Iowa on a continuous basis. The affidavit of Bankers' officer merely referred to doing business with Fidata on an annual basis without indicating where or how such business was conducted. It indicated that on many occasions Fidata's employees came to Iowa to train Bankers' personnel and provide them assistance. These activities, however, are of a general nature, similar to the trips that personnel of the nonresident corporations took in *Helicopteros* and *Belmont.*

Due to the general nature of the affidavit by an officer who obviously is relying on matters outside the scope of his personal knowledge, we are uncertain as to the number of trips to Iowa taken by Fidata's employees and the character of their activity within the state, other than to provide training and assistance. We are left to speculate whether such activities would cause Fidata to have invoked the benefits and protections of Iowa law. These general statements do not form substantial evidence of a continuous and systematic presence in the state of Iowa that is so pervasive as to subject Fidata to the general jurisdiction of the courts of this state.

In summary, we conclude that there is not substantial evidence of minimum contacts in the specific transaction at issue, nor do we find there is sufficient evidence that Fidata had substantial or continuous and systematic activities in Iowa which would allow personal jurisdiction to attach. Because we find the evidence lacking, we determine as a matter of law that Fidata is not subject to the personal jurisdiction of the Iowa court.

II. *Consent.* In its resistance to Fidata's motion to dismiss, General claims that Fidata consented to personal jurisdiction in Iowa. The pleadings do not indicate such an agreement. General did not submit any opposing affidavits pursuant to Iowa Rule of Civil Procedure 80(c). The only item before us that indicates the existence of such an agreement is Gener-

al's resistance to the motion to dismiss. Fidata vigorously challenges this assertion.

We do not believe that a resistance is evidence in itself. We conclude that there was not substantial evidence in the record to support a finding of fact that Fidata had consented to jurisdiction in Iowa. While we are uncertain as to whether the district court relied upon this finding when it overruled Fidata's motion to dismiss, we conclude that there was not sufficient evidence before the court on this issue.

III. *Summary.* We hold that there was not substantial evidence in the record to support the trial court's conclusion that this state had personal jurisdiction over Fidata or that Fidata consented to the jurisdiction of this court. Therefore, we reverse the ruling of the district court and remand for the entry of an order dismissing Fidata as a party to this action.

REVERSED AND REMANDED.