Ralston L. **TAYLOR**, Plaintiff/Appellant,

v.

**TRANS–ACTION ASSOCIATES, INC.,** An Illinois Corporation, and Louisiana Midland Railway Company, A Louisiana Corporation, Defendants/Appellees.

No. 92–795.

Court of Appeals of Iowa.

Oct. 28, 1993.

Steven S. Hoth of Steven S. Hoth Law Offices, Burlington, for appellant.

Andrew B. Prosser of Daily & Riley Law Firm, Burlington, for appellees.

Considered by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

HAYDEN, Judge.

The issue on appeal is whether defendants had sufficient contacts with Iowa to permit our courts to acquire personal jurisdiction over them. Plaintiff Ralston L. Taylor appeals the district court's ruling dismissing his cause of action for lack of jurisdiction over defendants Trans–Action Associates, Inc. (Trans–Action) and Louisiana Midland Railway Company (Louisiana Midland).

In 1973 Taylor became employed by Trans–Action, an Illinois corporation. In 1974 a subsidiary of Trans–Action, Louisiana Midland, began operating. Louisiana Midland was a Louisiana corporation. Craig Burroughs owned both corporations, which

conducted short-line railroad operations. Taylor eventually became a joint employee of Trans–Action and Louisiana Midland. In May 1977 Taylor suffered a broken leg while working in Louisiana for Louisiana Midland. In May 1980 Taylor brought a federal lawsuit against Louisiana Midland for damages due to the injuries he sustained.

In December 1982 Taylor's lawsuit against Louisiana Midland, among other disputes between Burroughs and Taylor, was settled. Burroughs, Trans–Action, and Taylor negotiated a settlement agreement which resolved a variety of disputes Taylor had with Burroughs personally, Louisiana Midland, and Trans–Action. The agreement provided settlement payments of $1000 per month for twenty-six months were to be paid to Taylor. Taylor and Burroughs, personally, signed the settlement agreement. Louisiana Midland made and mailed the payments to Taylor, who was residing in Iowa.

Louisiana Midland eventually defaulted on the settlement agreement. In 1984 Taylor resumed prosecution of his action against Louisiana Midland for damages due to physical injuries he sustained. On September 5, 1986, the United States District Court for the Western District of Louisiana entered a judgment against Louisiana Midland and awarded Taylor $54,400. The federal judgment was the result of physical injuries Taylor sustained while working for Louisiana Midland. This judgment has not been satisfied.

The plaintiff subsequently filed an action in Iowa courts, seeking to collect the judgment against Louisiana Midland. This appeal involves Taylor's attempt to collect the 1986 federal judgment. Taylor bases his action on allegations Trans–Action owns property in Iowa. Trans–Action owned a bridge spanning the Mississippi River and Blackhawk Chute from Keesburg, Illinois, to Oakville, Iowa, which is located in Louisa County, Iowa.

Vandalism of the bridge resulted in its falling into the Mississippi River blocking river navigation. A federal lawsuit against Trans–Action resulted in a settlement in which it deeded most of its property to the federal government. Taylor alleges Trans–

Action remains the titleholder of property consisting of a steel bridge span between Illinois and Iowa.

Trans–Action and Louisiana Midland ultimately filed a motion to dismiss the action for lack of personal jurisdiction. In his affidavit Burroughs stated Louisiana Midland was liquidated and its assets were distributed to secured creditors in 1986. Burroughs claimed Louisiana Midland had conducted no business activities since that time. In December 1981 Trans–Action was involuntarily dissolved in Illinois. After initially denying the motion to dismiss, the district court granted the motion upon a motion to reconsider. The court determined Taylor had failed to show either defendant had the minimum contacts sufficient to allow the court to exercise jurisdiction over them.

On May 8, 1992, Taylor filed notice of appeal.

■■■■ Our scope of review of a motion to dismiss for lack of personal jurisdiction is: "The trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record; we are not bound, however, by the trial court's application of legal principles or its conclusions of law." *Hagan v. Val–Hi, Inc.*, 484 N.W.2d 173, 175 (Iowa 1992) (quoting *Meyers v. Kallestead*, 476 N.W.2d 65, 66 (Iowa 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992)). Plaintiff has the burden to sustain the requisite jurisdiction. *Bankers Trust Co. v. Fidata Trust Co.*, 452 N.W.2d 411, 414 (Iowa 1990) (citation omitted).

■■■■ Due process considerations for assertion of personal jurisdiction over nonresidents require minimum contact with the forum state by a defendant sufficient to satisfy traditional notions of fair play and substantial justice. *Tung v. American Univ.*, 353 N.W.2d 869, 871 (Iowa App.1984) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945)). The constitutional "minimum contacts" standard is applied by Iowa courts on a case-by-case basis. *Heslinga v. Bollman*, 482 N.W.2d 921, 922 (Iowa 1992) (citing *In-*

*ternational Shoe Co.,* 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102). In applying the standard, we consider:

(1) the quantity of the contacts;

(2) the nature and quality of the contacts;

(3) the source and connection of the cause of action with these contacts;

(4) the interest of the forum state; and

(5) the convenience of the parties.

*Id.* at 922 (citing *Bankers Trust Co.,* 452 N.W.2d at 413). The minimum contacts test is meant to insure the fairness and reasonableness of requiring a nonresident to defend a lawsuit in the forum state. *International Shoe Co.,* 326 U.S. at 317, 66 S.Ct. at 158, 90 L.Ed. at 102. In order for a state to constitutionally exercise in personam jurisdiction, a litigant's conduct relative to the forum state must be such that the litigant should " 'reasonably anticipate being haled into court there.' " *Heslinga,* 482 N.W.2d at 922 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980)). It is essential there must exist some act by which a defendant purposefully avails itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws. *Hager v. Doubletree,* 440 N.W.2d 603, 607 (Iowa), *cert. denied,* 493 U.S. 934, 110 S.Ct. 325, 107 L.Ed.2d 315 (1989) (citing *Hanson v. Denckla,* 357 U.S. 235, 255, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958)). In determining whether minimum contacts exist, we focus on the relationship among the defendant, the forum, and the litigation. *Meyers,* 476 N.W.2d at 67 (citing *Rush v. Savchuk,* 444 U.S. 320, 327, 100 S.Ct. 571, 576, 62 L.Ed.2d 516, 524 (1980)). This relationship is defined by the defendant's contacts with the forum state, not with its residents. *Id.* (citing *Hanson,* 357 U.S. at 250–55, 78 S.Ct. at 1237–40, 2 L.Ed.2d at 1295–98).

■ I. *Trans–Action.* First we must determine whether Taylor has presented sufficient evidence to satisfy the minimum contacts test to justify subjecting Trans–Action to the jurisdiction of our courts.

One factor to be considered in deciding if sufficient minimum contacts exist is the source and connection of this cause of action with Trans–Action's previous contacts with the state of Iowa. *See Heslinga,* 482 N.W.2d at 922 (citation omitted). Trans–Action's contacts with Iowa involved the purchase of a bridge spanning from Iowa to Illinois and the relocation of a locomotive to Iowa. Taylor claims he conducted such business in Iowa on behalf of Trans–Action. Taylor testified Trans–Action intended to establish a rail line into Iowa. The record shows Taylor negotiated, in Chicago, the purchase of the locomotive for Trans–Action. The locomotive was located in Joliet, Illinois, and was later moved to Louisa County. Taylor asserted he rode a high rail truck over the bridge crossing the Mississippi River into Oakville, Iowa. The district court concluded Trans–Action's contacts with Iowa were not related to the suit in question. This cause of action involves Taylor's attempt to obtain a ruling holding Trans–Action liable for Louisiana Midland's debts and judgments, specifically for damages arising from injuries Taylor sustained while working for Louisiana Midland in Louisiana.

Finally, Trans–Action's activities do not subject Louisiana Midland to the jurisdiction of our courts. There is no evidence Trans–Action's activities in Iowa were conducted on behalf of Louisiana Midland.

Taylor has failed to meet his burden to show Trans–Action had sufficient minimum contacts with Iowa. In the absence of such a showing, our courts will not exercise jurisdiction over a nonresident defendant.

■ II. *Louisiana Midland.* Next we address whether evidence shows Louisiana Midland has sufficient minimum contacts with Iowa to permit our courts to exercise jurisdiction.

Evidence shows at no time did Louisiana Midland send an employee to Iowa, maintain offices in Iowa, or conduct business in Iowa. Taylor admitted he was never sent to Iowa to conduct any business for Louisiana Midland. Taylor stated he never entered into any contracts on behalf of Louisiana Midland with any person or entity in Iowa.

Q: All right. Let me ask you some specific questions. Were you ever sent to

the State of Iowa on behalf of Defendant LM [Louisiana Midland] to conduct any specific acts for Defendant LM [Louisiana Midland]? A: No.

Q: Did you ever enter into any contracts on behalf of Defendant LM [Louisiana Midland] with any entity or person in the State of Iowa? A: Nope.

Taylor's business activities were conducted outside of Iowa. The only connection between Louisiana Midland and Iowa appears to be the settlement checks Louisiana Midland mailed to Taylor, who was residing in Iowa.

■ The settlement agreement between Taylor and Burroughs was executed out-of-state in Chicago, Illinois, in 1982. The agreement was an attempt to resolve a variety of disputes which Taylor had with Burroughs personally, Louisiana Midland, and Trans–Action. One of the disputes included the 1986 federal judgment Taylor had been awarded for injuries he sustained while working for Louisiana Midland. Merely entering into an agreement with a forum resident does not provide the requisite contacts between a defendant and the forum state. *Tung,* 353 N.W.2d at 871 (citing *Iowa Elec. Light & Power Co. v. Atlas Corp.,* 603 F.2d 1301, 1303 (8th Cir.1979), *cert. denied,* 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980)).

The mailing of payments to Taylor was the result of the settlement agreement. "[T]he use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process." *Mountaire Feeds, Inc. v. Agro Impex,* 677 F.2d 651, 656 (8th Cir.1982) (citations omitted). Louisiana Midland's contacts, if any, with Iowa must be such it should have reasonably anticipated being haled into Iowa courts. *Bankers Trust Co.,* 452 N.W.2d at 414 (citing *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501). "The minimum contacts requirements demand conduct having to do with the state itself; they are not satisfied from a mere 'effect' felt by a plaintiff within his or her state of residence." *Percival v. Bankers Trust Co.,* 494 N.W.2d 658, 659–60 (Iowa 1993). The mailing was merely a ministerial

act. *See Bankers Trust Co.,* 452 N.W.2d at 414.

The connections between the parties occurred outside of Iowa or by interstate mail. We conclude these connections are not sufficient "minimum contacts" between the defendants and the State of Iowa so the assertion of personal jurisdiction would be consistent with traditional notions of fair play and substantial justice. *See Tung,* 353 N.W.2d at 871–72 (citation omitted). Substantial evidence supports the district court's finding Louisiana Midland did not have sufficient minimum contacts with the State of Iowa so as to expect to be haled into Iowa courts.

We hold the trial court correctly determined Trans–Action and Louisiana Midland had not purposefully established minimum contacts in Iowa. We affirm the district court's dismissal of the action against defendants.

Costs of this appeal are assessed to Ralston Taylor.

**AFFIRMED.**

DONIELSON, J., takes no part.