# IN THE SUPREME COURT OF IOWA

No. 21–1666

Submitted November 16, 2023—Filed December 15, 2023

**MARC HARDING** d/b/a **HARDING LAW FIRM,**

　　Appellee,

vs.

**RICK SASSO** d/b/a **INDIANA SPINE GROUP,**

　　Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

Interlocutory appeal from the denial of motion to dismiss suit for lack of personal jurisdiction. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT ORDER AFFIRMED AND CASE REMANDED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Brent R. Ruther of Aspelmeier, Fisch, Power, Engberg & Helling, PLC, Burlington, for appellant.

Jeffrey M. Lipman of Lipman Law Firm, West Des Moines, for appellee.

**McDonald, Justice.**

Iowa attorney Marc Harding engaged Indiana doctor Rick Sasso to provide expert witness services in a potential medical malpractice suit in Iowa. Things did not go according to plan, and Harding filed this suit against Sasso in Polk County, Iowa. Harding sought to recover all or part of the $10,000 retainer he paid to Dr. Sasso plus additional damages. Dr. Sasso moved to dismiss the suit for want of personal jurisdiction over him. The district court denied the motion, and Dr. Sasso filed an application for interlocutory review. We granted the application and transferred the case to the court of appeals. The court of appeals reversed the district court and remanded the case with instruction to dismiss the case. We granted Harding's application for further review.

I.

A state's authority to exercise jurisdiction over a nonresident defendant is limited by both the Federal Constitution and state law. *See Sioux Pharm, Inc. v. Summit Nutritionals Int'l, Inc.*, 859 N.W.2d 182, 188 (Iowa 2015).

With respect to the Federal Constitution, the Supreme Court holds that "[t]he Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). Under the Court's Fourteenth Amendment jurisprudence, a state's authority to exercise jurisdiction over a nonresident defendant "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).

With respect to state law, Iowa law provides that "[e]very corporation, individual, personal representative, partnership or association that shall have

the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state." Iowa R. Civ. P. 1.306. We have explained that rule 1.306 authorizes the widest exercise of personal jurisdiction allowed under the Supreme Court's precedents interpreting the Fourteenth Amendment. *See Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 583 (Iowa 2015); *Sioux Pharm, Inc.*, 859 N.W.2d at 188; *Ostrem v. Prideco Secure Loan Fund, LP*, 841 N.W.2d 882, 891 (Iowa 2014). Because Iowa law allows for the exercise of personal jurisdiction up to the federal constitutional limit, we focus on the federal constitutional requirements for exercising personal jurisdiction.

The Supreme Court has "recogniz[ed] two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co.*, 141 S. Ct. at 1024. "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the state." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction over a defendant allows a state court to adjudicate any and all claims against a defendant without regard to whether the claims relate to the forum state or the defendant's activities in the forum state. *See id.* In the paradigmatic case, an individual is subject to a state's general jurisdiction if the state is his domicile. *See id.*

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* The contact necessary to support the exercise of specific jurisdiction is not great. The defendant need only take "some act by which [he] purposefully avails [himself] of the privilege of conducting activities within the forum State." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* at 1025 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Even when the

defendant has sufficient minimum contact with the forum state, the forum state has jurisdiction over the defendant for only a limited set of claims. Specifically, the nonresident defendant can be sued in the forum state only when the plaintiff's claims " 'arise out of or relate to the defendant's contacts' with the forum." *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017)).

If a nonresident defendant has sufficient minimum contact with the forum state and the claim relates to the contact, the court may exercise personal jurisdiction over the defendant only where it "would comport with 'fair play and substantial justice.' " *Ostrem*, 841 N.W.2d at 893 (quoting *Cap. Promotions, L.L.C. v. Don King Prods., Inc.*, 756 N.W.2d 828, 834 (Iowa 2008)). In making that determination, courts focus on

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."

*Id.* (quoting *Cap. Promotions*, 756 N.W.2d at 834). In conducting this analysis, courts must be cognizant of not allowing jurisdictional rules to severely disadvantage a defendant. *See Shams v. Hassan*, 829 N.W.2d 848, 857 (Iowa 2013).

## II.

Dr. Sasso moved to dismiss Harding's petition for lack of personal jurisdiction. A motion to dismiss for lack of personal jurisdiction is a special proceeding that requires the district court to make findings of fact and conclusions of law in resolving the motion. *See PSFS 3 Corp. v. Michael P. Seidman, D.D.S., P.C.*, 962 N.W.2d 810, 826 (Iowa 2021). It is the plaintiff's burden to make a prima facie showing that the exercise of personal jurisdiction

is allowed. *See id.* In determining whether the plaintiff met that burden, the district court must accept as true the allegations of the petition and the content of any uncontroverted affidavits offered by the parties. *See id.*; *see also Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998) ("In conducting the requisite analysis under the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim. We then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." (citation omitted)). Once the plaintiff makes a prima facie showing that the exercise of jurisdiction is allowed, the burden shifts to the defendant to show the exercise of jurisdiction is unreasonable or otherwise improper. *PSFS 3 Corp.*, 962 N.W.2d at 826.

The operative pleading in this case is Harding's first amended petition. According to the first amended petition, Harding is an Iowa attorney practicing in Des Moines. Harding represented an Iowa resident pursuing a potential medical malpractice action in Iowa. The potential defendants were a surgeon that practices in Polk County, Iowa, and a medical facility located in Polk County, Iowa. Harding provided his client's medical records to an initial reviewer to make a preliminary assessment of the claim. The initial reviewer emailed an opinion to Harding stating that there was a breach of the standard of care that favored proceeding with the case. Harding then contacted Dr. Sasso d/b/a Indiana Spine Group. Dr. Sasso is an orthopedic surgeon who practices in Indiana. "On February 24, 2021, Harding and Sasso negotiated and agreed that Sasso would serve as an expert to both evaluate a potential malpractice claim and to testify as an expert in any ensuing litigation." Dr. Sasso's rate was $1,000 per hour. Harding sent Dr. Sasso a $10,000 advance for his services. The parties agreed that "any unearned portion of that advance would be returned to Harding." There

was no written contract memorializing the agreement. Harding provided Dr. Sasso with the initial reviewer's one-page email plus 166 pages of Harding's client's medical records. Dr. Sasso reviewed the records. On March 4, Dr. Sasso informed Harding via telephone that the potential defendants had not breached the standard of care. Dr. Sasso also informed Harding "that he spent *12 hours* reviewing the 166 pages and one-page email and would not be returning any of the $10,000 advance." Dr. Sasso informed Harding that he had not kept time records. According to the first amended petition, Dr. Sasso never returned any portion of the advance and never provided an accounting for the advance. The first amended petition sets forth claims for breach of contract, breach of fiduciary duty, conversion, and fraud against Dr. Sasso.

The parties then filed competing affidavits in support of and in resistance to the motion to dismiss. Dr. Sasso's affidavit provided that he is an orthopedic surgeon and the president of Indiana Spine Group. He formed Indiana Spine Group in Indiana in 2002. All of Indiana Spine Group's offices and business are in Indiana. Neither Dr. Sasso nor Indiana Spine Group have advertised or solicited business in Iowa. According to Dr. Sasso, Harding called him and requested that Dr. Sasso review the medical records. According to the affidavit, Harding did not share any plans for litigation in Iowa. Dr. Sasso informed Harding that he "would give [his] opinion of compliance with the standard of care . . . for a flat fee of $10,000." Dr. Sasso "did not commit to provide any particular result or opinion and did not commit to providing testimony in any case that Mr. Harding might file in the future." Dr. Sasso "did not imagine that any lawsuits could ever arise." He was "surprised to be sued in the State of Iowa." Dr. Sasso did not "engage in business in Iowa and performed all work for Mr. Harding at [his] office in Carmel, Indiana."

Harding filed an affidavit in support of his resistance to the motion to dismiss. In the affidavit, Harding disputed the terms of the parties' agreement. According to Harding, Dr. Sasso agreed that he "could serve as an expert at trial, and that he would require a $10,000.00 retainer, at which he would charge $1,000.00 per hour for his record review and trial testimony." Dr. Sasso never said the "retainer was non-refundable."

The district court denied Dr. Sasso's motion to dismiss. The district court took as true the averments set forth in the first amended petition and then considered the averments in Dr. Sasso's motion to dismiss along with his affidavit in support of the same to the extent the affidavit was uncontroverted. In reviewing the record, the district court found that Dr. Sasso agreed "to provide expertise and expert testimony to Plaintiff for a cause of action in an Iowa forum." The district court concluded that this was "sufficient to establish minimum contacts and personal jurisdiction over Defendant." Dr. Sasso did not file any motion to enlarge or amend the district court's ruling but instead sought interlocutory appeal. As noted above, the court of appeals reversed the order of the district court. We granted Harding's application for further review.

III.

We review the district court's ruling on the motion to dismiss for the correction of errors at law. *See Sioux Pharm, Inc.*, 859 N.W.2d at 188; *Shams*, 829 N.W.2d at 853. We are not bound by the district court's application of law or the district court's legal conclusions. *See Shams*, 829 N.W.2d at 853. We are bound by the district court's finding of facts, however. *See id.* "Unlike other grounds for dismissal . . . a court considering a motion to dismiss for lack of personal jurisdiction must make factual findings to determine whether it has personal jurisdiction over the defendant." *Id.* "The trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported

by substantial evidence in the record." *Hodges v. Hodges*, 572 N.W.2d 549, 551 (Iowa 1997). "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether [the evidence] supports the finding actually made, not whether the evidence would support a different finding." *State v. Lacey*, 968 N.W.2d 792, 800–01 (Iowa 2021) (quoting *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010)). Where the district court does not make explicit factual findings, we "presume the court decided the facts necessary to support its decision." *Bankers Tr. Co. v. Fidata Tr. Co. N.Y.*, 452 N.W.2d 411, 413–14 (Iowa 1990).

The following facts are supported by the record. Dr. Sasso provides medical services in Indiana and has never solicited or done business in Iowa. Dr. Sasso did not contact Harding in Iowa regarding this matter but was instead contacted by Harding from Iowa. Dr. Sasso agreed "to provide expertise and expert testimony to Plaintiff for a cause of action in an Iowa forum." While Dr. Sasso disputed this in the district court, the finding is supported by substantial evidence in the record. Specifically, that finding is supported by the averments in the first amended petition and Harding's affidavit in support of his resistance to the motion to dismiss. Dr. Sasso reviewed the medical records at issue from his office in Indiana. Dr. Sasso called Dr. Harding in Iowa to report his findings and conclusions to Harding.

On these facts, the question presented is whether the exercise of personal jurisdiction over Dr. Sasso to resolve a dispute regarding this contract is constitutional. "Personal jurisdiction is only appropriate when 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Book*, 860 N.W.2d at 584 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The essential inquiry is whether there was "some act by which the defendant

purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Sioux Pharm, Inc.*, 859 N.W.2d at 189 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Random or attenuated contacts with the forum state do not satisfy the minimum contacts test." *Book*, 860 N.W.2d at 584 (quoting *Ostrem*, 841 N.W.2d at 891). Instead, the contacts "must show that the defendant deliberately 'reached out beyond' its home—by, for example, . . . entering a contractual relationship centered there." *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Here, Dr. Sasso had sufficient minimum contacts with Iowa to support the exercise of personal jurisdiction over him with respect to claims arising out of and related to the parties' contract. Dr. Sasso's contact with Iowa was not random or attenuated. Instead, he purposefully availed himself of the privilege of doing business in Iowa. He entered into a contractual relationship with an Iowa lawyer. Dr. Sasso agreed to evaluate a medical malpractice claim involving an Iowa resident, a physician practicing in Iowa, and a medical facility located in Iowa. Critically, he also agreed to provide expert testimony at any trial in the medical malpractice case, which would have been venued in Iowa. Thus, at the time of the parties' agreement, one of the "contemplated future consequences" of the contract was that Dr. Sasso would perform part of the contract in an Iowa court. *Ostrem*, 841 N.W.2d at 892 (quoting *Burger King*, 471 U.S. at 479). In addition, the dispute between Harding and Dr. Sasso directly arises out of Dr. Sasso's contact with Iowa. "A single contact with the forum state can be sufficient to satisfy due process concerns when the plaintiff's claim arises out of the contact." *Shams*, 829 N.W.2d at 855; *see also Bristol-Myers*, 582 U.S. at 262 (explaining that there must be "an affiliation between the forum and the underlying controversy" (quoting *Goodyear*, 564 U.S. at 919)); *Sioux Pharm, Inc.*,

859 N.W.2d at 189 (stating a single contact can be enough when the claim arises out of the contact).

Having determined Dr. Sasso had sufficient minimum contact with the State of Iowa to support the exercise of personal jurisdiction over him with respect to this contract dispute, we must still "determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320); *see also Guardi v. Desai*, 151 F. Supp.2d 555, 559 (E.D. Pa. 2001) ("Second, if minimum contacts exist, the court must determine if exercising jurisdiction over the defendant would comport with 'traditional notions of fair play and substantial justice.'" (quoting *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996))). Dr. Sasso must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Shams*, 829 N.W.2d at 860 (quoting *Burger King*, 471 U.S. at 477). These compelling reasons "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Id.* (quoting *Pat. Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010)).

We cannot conclude this is a compelling or rare case where the exercise of jurisdiction is unreasonable or offends the "traditional notions of fair play and substantial justice." *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Int'l Shoe*, 326 U.S. at 316). The maintenance of the suit in Iowa does not place an unreasonable burden on Dr. Sasso. The parties contemplated and agreed that Dr. Sasso would perform part of the contract in Iowa. In particular, the parties contemplated and agreed he would testify in an Iowa court in any medical

malpractice claim. Dr. Sasso cannot now claim it is unexpected or unreasonable to make him appear in an Iowa court when he contracted to appear in an Iowa court. Further, "Iowa has a legitimate interest in adjudicating a dispute between one of its residents . . . and an out-of-state" party that contracted for services to be performed in this State. *Ostrem*, 841 N.W.2d at 903. "Certainly Iowa 'has a manifest interest in providing effective means of redress for its residents.' " *Id.* (quoting *McGee v. Int'l Life Ins.*, 355 U.S. 220, 223 (1957)). These last two factors alone, "the interests of the plaintiff and the forum,"—the United States Supreme Court has explained—often "will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987).

In concluding that the exercise of jurisdiction is constitutionally permissible here, we are persuaded by the decisions of other courts that have reached the same conclusion in materially indistinguishable circumstances. In *McNally v. Morrison*, Illinois plaintiffs filed a suit for breach of contract, consumer fraud, fraud, and professional negligence in Illinois against an Ohio doctor who they had retained to serve as an expert witness in an Illinois medical malpractice case. 951 N.E.2d 183, 185 (Ill. App. Ct. 2011). As in this case, the expert witness "never performed any physical activities in Illinois in conjunction with the medical malpractice case . . . and neither party assert[ed] that there [was] a written contract governing [the doctor's] services as an expert witness." *Id.* at 191. The circuit court dismissed the case for lack of personal jurisdiction, and the appellate court reversed. *Id.* at 194. The appellate court concluded there were sufficient minimum contacts with Illinois because the doctor was contractually "serving as an expert witness in an *Illinois* medical malpractice case." *Id.* at 193. "[E]ven though the only services that he had actually performed took place in Ohio, [the doctor's] services were intended to produce a result in Illinois." *Id.*

The *McNally* court also concluded that the exercise of jurisdiction would not be unreasonable. "The burden on [the doctor] to defend in Illinois does not appear to be unduly great. Ohio and Illinois are relatively close geographically." *Id.* The same is true here. In addition, the court explained that the doctor could not show how "defending a suit in Illinois under Illinois law would be unduly burdensome when he had already agreed to testify in an Illinois case." *Id.* The same is true here. "Third, exercising jurisdiction would further the plaintiffs' interest in obtaining convenient and effective relief." *Id.* The same is true here. The court concluded that "Illinois's interest in protecting its citizens . . . outweigh[ed] Ohio's interest in protecting its citizens from the inconvenience of defending a lawsuit in another state." *Id.* at 194. The same is true here as well.

In *Golden v. Stein*, a lawyer defendant in a professional malpractice case filed a third-party claim against an accounting firm he hired to provide damages opinions in the underlying case that ultimately gave rise to the malpractice case against the lawyer. 481 F. Supp. 3d 843, 846 (S.D. Iowa 2019). The expert witness moved to dismiss the third-party claim for lack of personal jurisdiction in Iowa. *Id.* The district court denied the motion to dismiss. *Id.* The underlying case was venued in Iowa. The expert witness agreed "to provide expert services for legal proceedings in" Iowa. *Id.* at 857. The parties understood that there was a "95–99 percent chance that the case would settle," *id.* at 849, "and that it was extremely unlikely that she would ever be asked to travel anywhere, let alone Iowa, for purposes of the [u]nderlying [a]ction," *id.* at 857. The witness never actually had to travel to Iowa in the underlying case. That did not change the fact that the expert witness understood at the time of contracting that "by agreeing to provide expert witness services in litigation in Iowa, some of the future consequences of failing to provide those services would occur to some degree in Iowa." *Id.* Further, the district court found the expert witness purposely

availed itself "of the privilege of conducting expert witness activities in this forum to earn expert witness fees, thus invoking the benefits and protections of this forum's laws." *Id.* at 860. The court held that "the exercise of personal jurisdiction over [the expert witness] in this forum [was] proper." *Id.* at 861.

Also directly relevant here is *Guardi v. Desai*, 151 F. Supp. 2d 555. In that case, Pennsylvania plaintiffs filed suit against a Colorado doctor who agreed to review medical records as an expert witness for "a potential medical negligence action in Pennsylvania." *Id.* at 559. The plaintiffs' lawyers mailed mammograms to the doctor for her review, but the doctor lost the mammograms; without the original mammograms, the plaintiffs were unable to proceed with their potential malpractice claims. *Id.* at 557. The court held this single contractual arrangement was sufficient minimum contact with the forum state to support the exercise of jurisdiction. The expert "purposefully availed herself of the privilege of doing business in Pennsylvania." *Id.* at 560. The expert's agreement to serve as an "expert in the potential malpractice case . . . created a continuing obligation between herself" and the plaintiffs. *Id.* The expert "should have expected that her activities . . . could cause her to be haled into court in Pennsylvania." *Id.* at 561. The court concluded that the exercise of jurisdiction would not be unreasonable. "While Defendant [did] have the burden of coming to Pennsylvania from Colorado, given her actions impacting on Pennsylvania residents, it [was] not unfair to require that she conduct her defense in Pennsylvania." *Id.* at 562.

Similarly compelling is *Echavarria v. Beck*, 338 F. Supp. 2d 258 (D.P.R. 2004). Like this case, *Echavarria* involved an expert witness who agreed to provide expert services in a different forum, and the dispute between the parties arose out of that agreement. *Id.* at 260. The district court in that case denied the expert's motion to dismiss, concluding:

> The facts before this Court demonstrate that Beck had minimum contacts with this forum that are sufficient to allow this Court to exercise jurisdiction over him. Beck was aware that he was rendering an expert opinion for a case in Puerto Rico, and that he would need to travel to Puerto Rico at least for a deposition and perhaps a trial. He received economic benefit from his contact, and could reasonably foresee that a cause of action could arise from said contact. This Court believes that plaintiffs have met the required prima facie burden to establish specific *in personam* jurisdiction over Beck.

*Id.* at 263.

Dr. Sasso argues that the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277, compels a different result. In *Walden*, a Georgia police officer working at an Atlanta airport seized money from two Nevada residents traveling back to Nevada. *Id.* at 280. The Nevada residents sued the officer in Nevada. *Id.* at 281. The Court held that Nevada did not have personal jurisdiction over the defendant even though "his conduct affected plaintiffs with connections to the forum State." *Id.* at 291.

"But *Walden* has precious little to do with the cases before us." *Ford Motor Co.*, 141 S. Ct. at 1031. As the Supreme Court subsequently explained in *Ford Motor Co.*, "In *Walden*, only the plaintiffs had any contacts with the State of Nevada." *Id.* The officer had never " 'purposefully avail[ed himself] of the privilege of conducting activities' in the forum State." *Id.* (alteration in original) (quoting *Hanson*, 357 U.S. at 253). But that is not true here. Dr. Sasso did purposefully avail himself of the privilege of providing expert witness services to an Iowa lawyer in a potential Iowa case involving a claim between Iowans with the understanding he might have to testify in an Iowa court. So, the only issue here is whether Dr. Sasso's single contact with Iowa is "related enough" to Harding's suit. *Id.* As set forth above, Dr. Sasso's contact with Iowa is "related enough" to this suit because Harding's claim against Dr. Sasso arises directly out of

Dr. Sasso's agreement to serve as an expert witness in an Iowa case, involving Iowans, to be litigated in an Iowa court.

IV.

For these reasons, we affirm the district court's order denying the defendant's motion to dismiss, and we remand this case for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT ORDER AFFIRMED AND CASE REMANDED.**