# United States Court of Appeals for the Federal Circuit

2009-1391


PATENT RIGHTS PROTECTION GROUP, LLC,

Plaintiff-Appellant,

v.

VIDEO GAMING TECHNOLOGIES, INC.,

Defendant-Appellee,

and

SPEC INTERNATIONAL, INC.,

Defendant-Appellee.


Mark Borghese, Weide & Miller, Ltd., of Las Vegas, Nevada, argued for plaintiff-appellant. With him on the brief was R. Scott Weide.

James D. Boyle, Santoro, Driggs, Walch, Kearney, Holley & Thompson, of Las Vegas, Nevada, argued for defendant-appellee Video Gaming Technologies, Inc.

Steven L. Underwood, Price, Heneveld, Cooper, DeWitt & Litton, LLP, of Grand Rapids, Michigan, argued for defendant-appellee Spec International, Inc. With him on the brief was Jason L. Budd.

Appealed from: United States District Court for the District of Nevada

Judge James C. Mahan

# United States Court of Appeals for the Federal Circuit

2009-1391

PATENT RIGHTS PROTECTION GROUP, LLC,

Plaintiff-Appellant,

v.

VIDEO GAMING TECHNOLOGIES, INC.,

Defendant–Appellee,

and

SPEC INTERNATIONAL, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the District of Nevada in case no. 2:08-CV-00662, Judge James C. Mahan

_____

DECIDED: May 10, 2010

_____

Before RADER, ARCHER, and LINN, <u>Circuit Judges</u>.

LINN, <u>Circuit Judge</u>.

Patent Rights Protection Group, LLC ("Patent Rights") appeals an order of the United States District Court for the District of Nevada granting SPEC International, Inc.'s ("SPEC") and Video Gaming Technologies, Inc.'s ("VGT") motions to dismiss for lack of personal jurisdiction and denying Patent Rights' request for jurisdictional discovery. Because the district court erred in concluding that exercising personal jurisdiction over SPEC and VGT would be unreasonable and abused its discretion in denying jurisdictional discovery on this basis, we vacate and remand.

I. Background

Patent Rights is a Nevada intellectual property holding company and the owner of U.S. Patents No. 6,475,087 and No. 6,860,814 ("the Gaming Patents"), which relate to various types of casino-style gaming machines. Patent Rights initiated separate lawsuits in the District of Nevada against out-of-state gaming companies Nova Gaming, LLC; Cadillac Jack, Inc.; and VGT, a Tennessee corporation. Patent Rights asserted in each suit that the respective company had infringed the Gaming Patents by displaying, using, and offering for sale gaming machines at trade shows in Nevada. See Complaint at 2, Patent Rights Prot. Group, LLC v. Nova Gaming LLC ("Nova Gaming"), No. 2:08-cv-00663-PMP-LRL (D. Nev. Dec. 30, 2008); Complaint at 2, Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc. ("Video Gaming Techs."), No. 2:08-cv-00662-JCM-LRL (D. Nev. April 29, 2009); Complaint at 2, Patent Rights Prot. Group, LLC v. Cadillac Jack, Inc. ("Cadillac Jack"), No. 2:08-cv-00660-KJD-RJJ, 2009 WL 2242674 (D. Nev. July 27, 2009). Each suit was assigned to a different judge in the District of Nevada. Patent Rights later added SPEC, a Michigan company, to each suit, asserting that SPEC had also infringed the Gaming Patents by displaying, using, and offering for sale cabinets that house gaming machines at trade shows in Nevada. See Amended Complaint at 2, Nova Gaming; Amended Complaint at 2, Video Gaming Techs.; Amended Complaint at 2, Cadillac Jack.

SPEC and VGT separately moved to dismiss the lawsuit underlying this appeal. Despite SPEC admitting that it had attended trade shows in Nevada "in the late 1990's" and both companies conceding that they had attended trade shows in Nevada in the "early 2000's, and more recently in 2007 and 2008," each company argued that its

contacts with Nevada were insufficient for the court to exercise personal jurisdiction. SPEC and VGT each stated that it was not registered to do business in Nevada and did not have sales agents, employees, manufacturing facilities, bank accounts, or telephone listings in Nevada. Each company further asserted that it did not manufacture any products in Nevada and that its respective website was not specifically targeted to residents of Nevada. VGT stated that it did not direct marketing efforts at Nevada nor generate any revenue from Nevada, while SPEC alleged that it had mailed brochures to eight potential customers in Nevada and had generated only de minimis sales in the state. SPEC also alleged that nearly all of its officers, employees, and records associated with the accused products were located in Michigan.

SPEC and VGT also argued that the venue selected by Patent Rights was improper, alleging that the District of Nevada does not satisfy the requirements of 28 U.S.C. § 1400(b). Alternatively, both companies asked the district court to either transfer the suit or stay it pending the outcome of a related declaratory judgment action filed by SPEC against Patent Rights in Michigan. Patent Rights submitted an opposition contesting the motions to dismiss and requesting jurisdictional discovery.

Before the district court decided the parties' respective motions, the district judge handling the Nova Gaming case dismissed that action, finding that Patent Rights had failed to establish that the court had personal jurisdiction over SPEC or Nova Gaming, LLC and that venue was improper. Nova Gaming, No. 2:08-cv-00663-PMP-LRL, slip op. at 2-3 (D. Nev. Dec. 30, 2008). SPEC informed the district court of the decision in Nova Gaming and the court ordered the parties to submit supplemental briefing on the preclusive effect of the decision.

After hearing oral argument regarding the parties' submissions, the district court dismissed the action without prejudice. The court concluded that exercising personal jurisdiction over SPEC or VGT would be unreasonable under Ninth Circuit precedent, finding that the relevant factors either weighed in favor of a finding of unreasonableness or were neutral. The court denied Patent Rights' request for jurisdictional discovery because, in the court's view, jurisdictional discovery would not affect the court's reasonableness analysis. The court determined that the alternative grounds for dismissal—issue preclusion and venue—were moot in light of the court's reasonableness determination. The court also found that SPEC's and VGT's requests to transfer or stay the action were moot because the declaratory judgment action that SPEC initiated in Michigan had been transferred to Nevada and dismissed.

Patent Rights filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. Discussion

On appeal, Patent Rights argues that the district court erred by applying Ninth Circuit law instead of Federal Circuit law in determining whether exercising personal jurisdiction would be reasonable. Both SPEC and VGT acknowledge that the district court erred by applying Ninth Circuit law but believe that this was harmless error because, in their view, application of our precedent leads to the same conclusion.

SPEC and VGT defend the district court's decision by arguing that they have not made the necessary "minimum contacts" with Nevada for the court to exercise personal jurisdiction and that the District of Nevada is an improper venue for this action. SPEC also renews its argument that the decision of the Nova Gaming court precludes the

district court from considering whether exercising personal jurisdiction over SPEC is proper. Although these issues were raised below, the district court declined to address them because the court's determination that exercising personal jurisdiction was unreasonable rendered the issues moot. As a general rule, "a federal appellate court does not consider an issue not passed upon below." Singleton v. Wulff, 428 U.S. 106, 120 (1976). We see no reason to depart from that rule here. Therefore, we address only the matters decided by the court—the reasonableness of exercising personal jurisdiction, and Patent Rights' request for jurisdictional discovery. We address each issue in turn. Although we consider the merits of the arguments raised by SPEC and VGT individually, we refer to them collectively, as the arguments are similar and complementary.

A. Reasonableness of Exercising Personal Jurisdiction

We apply Federal Circuit precedent when considering whether the district court properly declined to exercise personal jurisdiction. Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995) (citing Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564 (Fed. Cir. 1994)). Because personal jurisdiction is a question of law, we review de novo whether exercising personal jurisdiction over either SPEC or VGT would be unreasonable. 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1376 (Fed. Cir. 1998).

In general, a federal district court may exercise personal jurisdiction over a non-consenting out-of-state defendant if two requirements are satisfied. First, the defendant must be amenable to service of process. See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction

over a defendant, the procedural requirement of service of summons must be satisfied."); Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998) (explaining that usually the first step in a personal jurisdiction analysis is "determin[ing] whether a provision makes the defendant amenable to process."). Determining whether a defendant is amenable to service of process often entails considering whether the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," Fed. R. Civ. P. 4(k)(1)(A). This, in turn, involves examining the state's long-arm statute. See, e.g., Red Wing Shoe Co., 148 F.3d at 1358. Second, exercising jurisdiction over the defendant must comport with due process. See Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008) ("Determining whether personal jurisdiction exists over an out-of-state defendant involves . . . [considering] whether the assertion of personal jurisdiction would violate due process." (quoting Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001))). The "constitutional touchstone" of the due process inquiry "remains whether the defendant purposefully established 'minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Finding the necessary minimum contacts to exist, however, does not end the inquiry. Even where a party has been shown to have minimum contacts with the forum state, these contacts "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice,'" i.e., whether exercising jurisdiction would be reasonable. See id. at 476. The "requirements inherent in the concept of 'fair play and substantial justice' may defeat the

reasonableness of jurisdiction even if [a] defendant has purposefully engaged in forum activities." Id. at 477-78. Factors relevant to this inquiry may include the following:

> [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

Id. at 476-77 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1985)) (internal quotation marks omitted).

The Supreme Court has stated that "where a defendant [that] purposefully has directed [its] activities at forum residents seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 477. We have explained that these compelling cases "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." Beverly Hills Fan Co., 21 F.3d at 1568.

Here, the district court correctly noted that the relevant long-arm statute, Nevada Revised Statute § 14.065, permits Nevada courts to exercise personal jurisdiction over a party to the extent permitted by the United States Constitution. See Baker v. Eighth Judicial Dist. Court, 116 Nev. 527, 531 (2000) ("Nevada's long-arm statute, NRS 14.065, reaches the limits of due process set by the United States Constitution." (citation omitted)). Thus, the two-step personal jurisdiction inquiry described above reduces to a single question: Does exercising personal jurisdiction over SPEC and VGT satisfy due process? The district court acknowledged that exercising personal

jurisdiction over SPEC and VGT would satisfy due process only if each company had the requisite minimum contacts with Nevada. But instead of determining whether either SPEC or VGT had such minimum contacts with Nevada, the district court evaluated only whether exercising personal jurisdiction over either SPEC or VGT should be defeated as being unreasonable, applying the seven-factor test set out by the Ninth Circuit in Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848 (9th Cir. 1993).

The district court concluded that exercising personal jurisdiction would be unreasonable, finding that three factors militated in favor of this conclusion: (1) both SPEC and VGT had limited purposeful contact with Nevada, consisting essentially of only appearances at trade shows; (2) both the companies and their respective witnesses are located outside Nevada, making defending a lawsuit in Nevada burdensome; and (3) both companies would be subject to personal jurisdiction in another forum, namely, Michigan or Tennessee. Order Granting Motion to Dismiss at 2-3, Video Gaming Techs. ("Dismissal Order"). The court found the remaining considerations neutral, concluding that this case does not present issues of state sovereignty; the parties' respective home states have an interest in the litigation equal to that of Nevada; and a Nevada district court would be no more convenient or efficient for Patent Rights than any other district court. Id. at 3. The district court also considered that Patent Rights is a Nevada company that chose to pursue its claim in Nevada. Id.

Patent Rights contends that under our precedent this case does not present a compelling situation where Patent Rights' and Nevada's interests are outweighed by the burden faced by either SPEC or VGT. Patent Rights argues that, on balance, the

factors set forth in <u>Burger King</u> indicate that exercising personal jurisdiction over SPEC and VGT would be reasonable. SPEC and VGT disagree and contend that weighing the relevant factors leads to the conclusion that asserting personal jurisdiction over either company is unreasonable. Specifically, they argue that defending this suit in Nevada is overly burdensome because their respective witnesses and documents related to the alleged infringing products are outside Nevada. They also contend that Tennessee and Michigan each have an interest in this suit equal to, if not greater than, that of Nevada and that either Tennessee or Michigan provides a more efficient forum to hear Patent Rights' claims. SPEC and VGT believe that Nevada's interest here is limited to providing a forum for Nevada citizens who would be severely economically disadvantaged by pursuing their claims outside Nevada. They claim that Patent Rights would not suffer significant hardship, pecuniary or otherwise, if forced to pursue its claims elsewhere.

We agree with Patent Rights. "[B]ecause modern transportation and communications have made it much less burdensome for a party sued to defend [itself]" outside its home state, <u>Burger King</u>, 471 U.S. at 474 (citation omitted), defending this suit in Nevada is not prohibitively burdensome for either SPEC or VGT. Indeed, their admitted presence at numerous trade shows in Nevada indicates that, despite their arguments to the contrary, neither company faces a particularly onerous burden in defending itself in Nevada.

When SPEC's and VGT's respective burdens are weighed against the other factors set forth in <u>Burger King</u>, in particular Nevada's and Patent Rights' interest in this litigation, it cannot properly be concluded that the either SPEC or VGT has presented a

compelling case that the presence of some other consideration would render jurisdiction unreasonable. See id. 471 U.S. at 477. Here, Nevada has an interest in providing a convenient forum for all Nevada citizens, not just those who might face severe economic hardship if forced to litigate outside Nevada. Cf. id. at 473. ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). This interest extends to actions for patent infringement. Beverly Hills Fan Co., 21 F.3d at 1568. Moreover, Nevada "has a substantial interest in cooperating with other states to provide a forum for efficiently litigating [a] plaintiff's cause of action." Id. (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777 (1984)). By providing a forum for Patent Rights' claims against SPEC and VGT, Nevada spares Tennessee and Michigan the burden of providing a forum for Patent Rights. Not only does this further the "interstate judicial system's interest in obtaining the most efficient resolution of controversies," it also satisfies Patent Rights' "interest in obtaining convenient and effective relief," as Patent Rights might otherwise face the substantial burden of pursuing separate, largely similar actions against SPEC and VGT in their respective home states.

Because patent infringement is a matter of federal law, "the shared interest of the several States in furthering fundamental substantive social policies" is not implicated by this action. See Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1352 (Fed. Cir. 2003). After weighing the relevant factors, we are convinced that this is not the rare situation in which the plaintiff's and the state's interests in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendants to litigation within the forum. See Beverly Hills Fan Co., 21 F.3d at 1568.

We therefore conclude that the district court erred when it declined to exercise jurisdiction over SPEC and VGT solely on the ground that to do so was unreasonable.

## B. Jurisdictional Discovery

"We review the district court's denial of discovery, an issue not unique to patent law, for abuse of discretion, applying the law of the regional circuit," here the Ninth Circuit. Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1021-22 (Fed. Cir. 2009) (citing Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1370 (Fed. Cir. 2007)). In the Ninth Circuit, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Laub v. U.S. Dep't of the Interior, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting Butcher's Union Local No. 498 v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986)). But it is not an abuse of discretion to deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," Am. W. Airlines, Inc. v. GPA Group, Ltd., 877 F.2d 793, 801 (9th Cir. 1989) (quoting Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977)), or where the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts," Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (citing Butcher's Union, 788 F.2d at 540). "A decision to deny discovery will not be disturbed except upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." Laub, 342 F.3d at 1093 (citation and quotation marks omitted). "Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed." Id.

The district court denied Patent Rights' request for jurisdictional discovery because the court believed that the "request for jurisdictional discovery, even if granted, would have no bearing on the . . . [reasonableness] analysis" that led the court to dismiss the suit. Dismissal Order at 3. Patent Rights essentially argues that the district court abused its discretion by denying jurisdictional discovery because such discovery is ordinarily granted where, as here, it would help clarify the issues. SPEC and VGT respond that the court did not abuse its discretion by denying what they characterize as an undefined and unsupported discovery request that would not affect the district court's analysis.

We again agree with Patent Rights. Patent Rights' request for jurisdictional discovery is not based on a mere hunch; rather, the request is supported by the declaration of Joseph P. Cole, the inventor of the subject matter claimed in the Gaming Patents and a "member" of Patent Rights. Cole declared that he was aware that SPEC and VGT had used and marketed what appeared to be infringing gaming machines at exhibits at the Global Gaming Expo ("the Expo"), a gaming trade show held in Las Vegas, Nevada. Cole stated that upon information and belief these gaming machines were operational and set up to present games at the Expo. Although SPEC and VGT each take issue with Cole's declaration, neither company denies attending this trade show and exhibiting gaming products while there. To the extent that either SPEC or VGT contends that they attended these trade shows without a commercial purpose, we find that this contention strains credulity. It is simply unrealistic to contend that either SPEC or VGT, companies engaged in the business of selling gaming products, would exhibit its products at a gaming trade show in Las Vegas, Nevada, one of the world's

larger gaming markets, without some prospect of commercial benefit. Under these circumstances, it is apparent that additional discovery may unearth facts sufficient to support the exercise of personal jurisdiction over one or both of the companies. Accordingly, we conclude that the district court's denial of Patent Rights' request for jurisdictional discovery resulted in actual and substantial prejudice to Patent Rights— premature dismissal of Patent Rights' suit—and therefore constituted an abuse of discretion.

## III. Conclusion

For the foregoing reasons, we conclude that the district court erred when it declined to exercise personal jurisdiction over SPEC and VGT solely on the basis of unreasonableness and abused its discretion when it denied Patent Rights' request for jurisdictional discovery. We therefore vacate the district court's judgment and remand for further proceedings consistent with this opinion.

<u>VACATED</u> and <u>REMANDED</u>