# IN THE SUPREME COURT OF IOWA

No. 12–0036

Filed April 19, 2013

**SAMIR M. SHAMS,**

    Appellant,

vs.

**SONA HASSAN,**

    Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

Plaintiff seeks further review of a court of appeals decision affirming a decision of the district court dismissing a petition for lack of personal jurisdiction. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, for appellant.

Steven C. Reed, West Des Moines, for appellee.

**CADY, Chief Justice.**

In this appeal, we must determine whether the exercise of personal jurisdiction over a nonresident defendant to a lawsuit filed in Iowa that alleged misappropriated funds from an Iowa bank account comports with the guarantees of the Due Process Clause of the Fourteenth Amendment. The district court held sufficient minimum contacts were lacking and dismissed the lawsuit. The court of appeals affirmed the decision of the district court. On further review, we reverse the decisions of the court of appeals and the district court and conclude the nonresident defendant is subject to personal jurisdiction in Iowa. We remand the case for further proceedings.

## I. Background Facts and Proceedings.

Sona Hassan and Samir Shams are sister and brother. Hassan has been a resident of Maryland for many years and has not visited Iowa since 1983. In 2003, Shams allegedly lived in Iowa. He had two children who resided in Iowa and one child who resided in Arizona.

Shams obtained employment in Iraq in 2003. To provide for his children in his absence, he opened a checking account at Bankers Trust in Des Moines before leaving for Iraq. He planned to use the account to deposit the money he would earn from his employment. Shams claimed Hassan orally agreed to use the account in his absence to provide for the needs of his children and to pay his bills. To carry out the agreement, Shams provided Hassan with checks that could be used to draw on the account. Shams signed the checks as the drawer, but otherwise left the checks blank. Shams delivered the checks to Hassan in Maryland, where she was to negotiate them when needed and mail them to the payee. Shams and Hassan discussed the terms of the agreement over the telephone.

Instead of using the checks to provide for the children as agreed, Shams claimed Hassan used the checks to withdraw funds from the Iowa account for her personal use. Shams alleged Hassan ultimately misappropriated $271,773.93.

Shams filed a lawsuit against Hassan in Iowa district court for breach of contract, conversion, bad faith, fraud, and breach of fiduciary duty. Hassan moved to dismiss for lack of personal jurisdiction. *See* Iowa R. Civ. P. 1.421(1)(*b*) (permitting a defendant to make a preanswer motion to dismiss for "[l]ack of jurisdiction over the person"). In her motion to dismiss the lawsuit, Hassan claimed Shams had no meaningful contact with Iowa. She asserted Shams actually resided in Maryland at the time he gave her the checks, after Shams return from Iraq, and as recently as March 2011. Hassan argued Shams randomly opened the bank account in Iowa "solely on his own initiative." Hassan indicated in an affidavit the account should have been opened in Maryland where she lived with her husband, and she had no role in opening the account in Iowa.

Shams resisted the motion, relying on the purported 2003 agreement, which according to Shams "was to be performed in whole or in part in Iowa, using an Iowa Bank, for Iowa beneficiaries." In Shams's view, the breach of that contract and the attendant claims (conversion, bad faith, breach of a fiduciary duty) necessarily arose out of the agreement and the actions of Hassan in misappropriating funds located in an Iowa bank account. Shams also argued he had substantial ties to Iowa. He claimed he purchased a home in Iowa in 2009 and obtained an Iowa driver's license in 2010.

The district court granted the motion to dismiss. The court reasoned that, even if an agreement was reached, the formation of a

contract in Iowa did not justify jurisdiction. Similarly, the court found phone conversations would not be enough to satisfy the due process standard for exercising personal jurisdiction. The court concluded, "The only connection between Ms. Hassan, Iowa, and the cause of action in this case is the fact that the checks were drawn upon an Iowa bank account and [Hassan] may or may not have entered into an oral agreement with [Shams] while he was residing in Iowa." Shams appealed, and we transferred the case to the court of appeals.

The court of appeals affirmed the decision of the district court. It considered the unilateral actions by Shams in opening the Iowa account, making himself the drawer on the account, and providing checks to Hassan in Maryland did not establish purposeful conduct by Hassan with an Iowa resident. Shams sought, and we granted, further review.

## II. Standard of Review.

We review a district court's decision on a motion to dismiss for lack of personal jurisdiction for correction of errors at law. *Addison Ins. Co. v. Knight, Hoppe, Kurnik & Knight, L.L.C.*, 734 N.W.2d 473, 476 (Iowa 2007); *see also* Iowa R. App. P. 6.907. We are thus not bound by the district court's conclusions of law or application of legal principles. *Ross v. First Sav. Bank of Arlington*, 675 N.W.2d 812, 815 (Iowa 2004).

Unlike other grounds for dismissal, however, a court considering a motion to dismiss for lack of personal jurisdiction must make factual findings to determine whether it has personal jurisdiction over the defendant. *Capital Promotions, L.L.C. v. Don King Prods., Inc.*, 756 N.W.2d 828, 832 (Iowa 2008). Those findings are binding if supported by substantial evidence. *Hodges v. Hodges*, 572 N.W.2d 549, 551 (Iowa 1997).

While the plaintiff has the burden to establish jurisdiction may be had over the defendant, " 'we accept as true the allegations of the petition and the contents of uncontroverted affidavits.' " *Addison Ins. Co.*, 734 N.W.2d at 476 (quoting *Aquadrill, Inc. v. Envtl. Compliance Consulting Servs., Inc.*, 558 N.W.2d 391, 392 (Iowa 1997)). After the plaintiff makes a prima facie case showing that personal jurisdiction is appropriate, the burden shifts to the defendant to rebut that showing. *State ex rel. Miller v. Internal Energy Mgmt. Corp.*, 324 N.W.2d 707, 710 (Iowa 1982)).

**III. Discussion.**

**A. Legal Framework.**[1] Section 1 of the Fourteenth Amendment to the United States Constitution declares that no state shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. One application of this Clause limits a state's power to exercise personal jurisdiction over a nonresident defendant. *Ross*, 675 N.W.2d at 815 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404, 410 (1984)); *see also Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 729–30,

---

[1]Historically, assessing the propriety of asserting personal jurisdiction over a nonresident was analytically "a two-step process: (1) is there a statute or rule authorizing exercise of jurisdiction, and (2) does such jurisdiction offend due process principles?" *See Hodges*, 572 N.W.2d at 551–52. The Iowa Rules of Civil Procedure provide:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

Iowa R. Civ. P. 1.306. We have interpreted this language as reaching to the widest parameters permitted by the Due Process Clause. *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005). Accordingly, we proceed immediately to the constitutional inquiry here.

24 L. Ed. 565, 571 (1878) (holding a judgment obtained in the absence of proper personal jurisdiction over the defendant is not entitled to full faith and credit from other jurisdictions), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186, 212 & n.39, 97 S. Ct. 2569, 2584 & n.39, 53 L. Ed. 2d 683, 703 & n.39 (1977).  "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' "  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S. Ct. 2174, 2181, 85 L. Ed. 2d 528, 540 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 160, 90 L. Ed. 95, 104 (1945)).

Therefore, a court may constitutionally exercise personal jurisdiction over the nonresident defendant when the defendant has " 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' "  *Universal Coops., Inc. v. Tasco, Inc.*, 300 N.W.2d 139, 143 (Iowa 1981) (quoting *Int'l Shoe*, 326 U.S. at 316, 66 S. Ct. at 158, 90 L. Ed. at 102).  Fairness is the crux of the minimum-contacts analysis.  "The minimum contacts must show 'a sufficient connection between the defendant and the forum state so as to make it fair' and reasonable to require the defendant to come to the state and defend the action."  *Ross*, 675 N.W.2d at 815 (quoting *Hodges*, 572 N.W.2d at 551); *accord Kulko v. Super. Ct. of Cal.*, 436 U.S. 84, 91, 98 S. Ct. 1690, 1696, 56 L. Ed. 2d 132, 141 (1978) ("The existence of personal jurisdiction . . . depends upon . . . a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum." (Citation omitted.)).

"This test makes it 'essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Ross*, 675 N.W.2d at 815–16 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283, 1298 (1958)). As such, the "'purposeful availment' requirement" is the "constitutional touchstone" of the personal jurisdiction analysis. *Burger King Corp.*, 471 U.S. at 474–75, 105 S. Ct. at 2183–84, 85 L. Ed. 2d at 542. It guarantees a defendant will not be required to defend a lawsuit in a state court "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts," *id.* at 475, 105 S. Ct. at 2183, 85 L. Ed. 2d at 542 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74, 104 S. Ct. 1473, 1477–78, 79 L. Ed. 2d 790, 796–97 (1984)), but rather only when the defendant "'should reasonably anticipate being haled into court'" in that state, *Capital Promotions*, 756 N.W.2d at 833 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490, 501 (1980)).

There are two categories of cases in which the defendant's contacts with the forum state are sufficient to make the exercise of personal jurisdiction over them proper. *See id.* In one group of cases, the defendants maintain "'continuous and systematic'" contacts with the forum state such that they should anticipate defending the suit in the state even when the suit is unrelated to their contacts with the forum state. *Helicopteros*, 466 U.S. at 414–15, 104 S. Ct. at 1872, 80 L. Ed. 2d at 411 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 72 S. Ct. 413, 414, 96 L. Ed. 485, 489 (1952)). This first group of cases involves what is known as "general jurisdiction." *Capital Promotions*, 756 N.W.2d at 833. The parties agree Hassan's contacts with Iowa do not

meet this substantial threshold. Therefore, general jurisdiction does not exist over Hassan.

In the second group of cases, jurisdiction is appropriate, even when the defendant's contacts with the forum state are limited, as long as the "controversy is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414, 104 S. Ct. at 1872, 80 L. Ed. 2d at 411. A single contact with the forum state can be sufficient to satisfy due process concerns when the plaintiff's claim arises out of the contact. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223, 226 (1957). For instance, we have upheld the exercise of personal jurisdiction over a nonresident corporation based on one phone call, when the claim—an assertion that the call was harassing and in violation of our consumer credit code—necessarily arose out of the single contact in Iowa. *Norton v. Local Loan*, 251 N.W.2d 520, 522 (Iowa 1977). The type of jurisdiction in this second group of cases is called "specific jurisdiction," *Capital Promotions*, 756 N.W.2d at 833, and it forms the heart of the controversy in this case.

When we consider whether an assertion of personal jurisdiction passes constitutional muster in the specific jurisdiction context, "the critical focus is on the relationship among the defendant, the forum and the litigation." *Meyers v. Kallestead*, 476 N.W.2d 65, 67 (Iowa 1991). Due process is concerned with "the defendant's connection with the *litigation* in the forum state, not the defendant's connection with *residents* in that state." *In re Marriage of Crew*, 549 N.W.2d 527, 530 (Iowa 1996). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson*, 357 U.S. at 253, 78 S. Ct. at 1239–40, 2 L. Ed. 2d at 1298. These principles reflect, and are derived

from, the constitutional requirement for the defendants to purposefully avail themselves of the privilege of conducting activities in the forum state.

In contrast to cases in which defendants purposefully avail themselves of the protection of a state's laws, the mere foreseeability of causing an injury in another state "alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp.*, 444 U.S. at 295, 100 S. Ct. at 566, 62 L. Ed. 2d at 500. However, foreseeability is not wholly irrelevant. *Id.* at 297, 100 S. Ct. at 567, 62 L. Ed. 2d at 501. In fact, in some cases, the primary location of the effects of a defendant's actions can be exceedingly relevant, particularly in cases that do not deal with "mere untargeted negligence." *Calder v. Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482, 1487, 79 L. Ed. 2d 804, 812 (1984). Thus, foreseeable effects from an intentional tort can occasionally support jurisdiction under the Due Process Clause. *See id.*

To be sure, "*Calder* did not 'carve out a special intentional torts exception to the traditional specific jurisdiction analysis.'" *Capital Promotions*, 756 N.W.2d at 836 (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998)). "[A] majority of courts have interpreted *Calder* to require 'more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum.'" *Id.* (quoting *IMO Indus., Inc.*, 155 F.3d at 265). "Thus, even under the *Calder* effects test, 'a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws.'" *Id.* at 837 (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995)). A plaintiff attempting to obtain personal jurisdiction under *Calder* must show:

"(1) the defendant's acts were intentional; (2) these actions were uniquely or expressly aimed at the forum state; and (3) the brunt of the harm was suffered in the forum state, and the defendant knew the harm was likely to be suffered there."

*Id.* (quoting *Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 900 (Iowa Ct. App. 2002)).

In short, the *Calder* test permits an intentional tort conducted in another forum to count as a contact within the forum state under certain circumstances. In determining whether the plaintiff has satisfied this test, we look at the location of the tortious activities and the "focal point" of the alleged tort. *See id.*

In the past, we have utilized an arguably different test from the federal model. We have articulated a five-factor test to evaluate whether a nonresident defendant had sufficient minimum contacts with Iowa. *Id.* at 833. The five factors are:

"(1) the quantity of the contacts;
(2) the nature and quality of the contacts;
(3) the source of and connection of the cause of action with those contacts;
(4) the interest of the forum state; and
(5) the convenience of the parties."

*Ross*, 675 N.W.2d at 816 (quoting *Cascade Lumber Co. v. Edward Rose Bldg. Co.*, 596 N.W.2d 90, 92 (Iowa 1999)). We have generally considered the first three to be the most important. *Cascade Lumber Co.*, 596 N.W.2d at 92.

Without expressly disavowing our five-factor test, we have followed the modern federal framework more closely in recent years, relying on its two main criteria. *Capitol Promotions,* 756 N.W.2d at 834. The two criteria are (1) whether " 'the defendant has "purposefully directed" his activities at residents of the forum,' " and (2) whether " 'the litigation

results from alleged injures that "arise out of or relate to" those activities.' " *Id.* (quoting *Burger King Corp.*, 471 U.S. at 472–73, 105 S. Ct. at 2182, 85 L. Ed. 2d at 540–41). Nonetheless, our older five-factor test remains a useful tool, even if it may have less primacy. *See id.*

If sufficient minimum contacts exist, the court must then " 'determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." ' " *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476, 105 S. Ct. at 2184, 85 L. Ed. 2d at 543). In making this latter decision, we consider

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."

*Burger King Corp.*, 471 U.S. at 477, 105 S. Ct. at 2184, 85 L. Ed. 2d at 543) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S. Ct. at 564, 62 L. Ed. 2d at 498).

" 'These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.' " *Capitol Promotions*, 756 N.W.2d at 837 (quoting *Burger King Corp.*, 471 U.S. at 477, 105 S. Ct. at 2184, 85 L. Ed. 2d at 543–44). "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 114, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92, 105–06 (1987). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would

render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477, 105 S. Ct. at 2184–85, 85 L. Ed. 2d at 544. We are careful, however, to ensure that jurisdictional rules are not employed one way or another to make litigation " 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Id.* at 478, 105 S. Ct. at 2185, 85 L. Ed. 2d at 544 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S. Ct. 1907, 1917, 32 L. Ed. 2d 513, 525 (1972) (first quoted material); *McGee*, 355 U.S. at 223, 78 S. Ct. at 201, 2 L. Ed. 2d at 226 (second quoted material)).

**B. Sufficiency of Hassan's Contacts with Iowa.** The heart of the analysis in this case concerns whether the location of the bank account in Iowa constitutes a mere unilateral contact of the plaintiff, *see Hanson*, 357 U.S. at 253, 78 S. Ct. at 1239–40, 2 L. Ed. 2d at 1298, or a foreseeable effect in Iowa from an intentional tort out of state, *see Calder*, 465 U.S. at 789, 104 S. Ct. at 1486–87, 79 L. Ed. 2d at 812. Hassan had, at most, three contacts with the State of Iowa for purposes of the minimum-contacts analysis.[2] First, Shams suggests at various points that the parties may have technically formed the contract in Iowa. Second, Shams argues the contract was to be performed in Iowa, of which he says Hassan was well aware. Third, the funds were drawn on an Iowa bank account. According to Shams, the repeated withdrawal of

---

[2]Shams and Hassan both argue fairly extensively Shams's residence during all material events of this case. As *Hanson* dictates, Shams's residence is immaterial to a determination of whether personal jurisdiction is appropriate over Hassan. Of course, if Hassan has sufficient contacts with Iowa to justify jurisdiction, Shams's residence in Iowa would be relevant to the determination of whether exercise of jurisdiction based on those sufficient contacts is fair; after all, a state has an interest in providing a forum in which its residents may seek relief. *Cf. Asahi Metal*, 480 U.S. at 114, 107 S. Ct. at 1033, 94 L. Ed. 2d at 106 ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.").

the funds constituted tortious conversions in Iowa. As we make this inquiry, we must remember that the constitutional minimum-contacts analysis is a fact-intensive one; and we apply it on a case-by-case basis. *Heslinga v. Bollman*, 482 N.W.2d 921, 922 (Iowa 1992).

Broadly speaking, Shams relies on a counterfactual argument: "Had [Hassan] not contacted the Iowa bank by cashing the checks, she would not have accessed the money, she would not have used the money for her personal desires, and the factual basis of this lawsuit would never have arisen." Hassan rejoins that her contacts with Iowa were insignificant. In fact, Hassan argues that no contact with Iowa was purposefully directed at the state. Consequently, she argues, it is unnecessary to consider whether Shams's claim arises out of or is related to contacts she might have with Iowa.

We recognize that checks drawn on an in-state bank are often of "negligible significance" in the determination of whether defendants have purposely availed themselves of Iowa law. *See Helicopteros*, 466 U.S. at 416, 104 S. Ct. at 1873, 80 L. Ed. 2d at 412. Commensurate with the fairness inherent in constitutional personal jurisdiction analysis, most claims ordinarily do not arise out of or relate to the bank account on which the check is drawn or to be deposited. *See Twaddle v. Twaddle*, 582 N.W.2d 518, 521–22 (Iowa Ct. App. 1998) (discussing cases in which funds were either drawn on forum-state banks or to be repaid to accounts in forum-state banks). Consistent with many cases involving a breach of contract, Shams's choice of an Iowa bank account was arguably an irrelevant unilateral contact of the plaintiff. *See id.* at 522; *see also Hanson*, 357 U.S. at 253, 78 S. Ct. at 1239–40, 2 L. Ed. 2d at 1298.

But, *Helicopteros* and *Twaddle* are distinguishable because the checking accounts in both cases were, at most, of passing legal significance. The Houston checking account in *Helicopteros* was offered as one of several contacts alleged to be continuous and systematic, which—if they were in fact continuous and systematic—would have provided the Texas court with general jurisdiction. *See* 466 U.S. at 416, 104 S. Ct. at 1872–73, 80 L. Ed. 2d at 412. General jurisdiction, of course, would have justified personal jurisdiction even though the claim in *Helicopteros* was unrelated to the Houston bank account in question. *See id.* at 415–16, 104 S. Ct. at 1872–73, 80 L. Ed. 2d at 411–12. In *Twaddle*, the bank account was merely incidental to the assertion of specific jurisdiction over the promise the defendant made to repay the plaintiff, an Iowa resident. *See* 582 N.W.2d at 521–22.

In this case, the contacts by Hassan in allegedly using the Iowa bank account make personal jurisdiction appropriate under the *Calder* theory we adopted in *Capital Promotions*. The first prong of the *Calder* test is easily met. Shams alleged Hassan's acts were intentional. *See Capital Promotions*, 756 N.W.2d at 837.

The key questions derived from the second and third prongs turn on whether Hassan's actions were " 'uniquely or expressly aimed' " at Iowa and whether the harm was felt primarily in Iowa. *See id.* (quoting *Roquette Am., Inc.*, 651 N.W.2d at 900). With respect to the second prong of the *Calder* test, Shams argued that since the misappropriation was akin to stealing, Hassan necessarily directed her actions at Iowa. We think our discussion in *Capital Promotions* of the focal point of the alleged tort is instructive in this case. In *Capital Promotions*, the defendant's allegedly tortious acts were aimed at a Nevada resident and "centered on a [boxing match] to take place in Missouri." *Id.* Iowa, the

domicile of the plaintiff, "was not the focal point of the alleged tort." *Id.* Rather, the plaintiff's domicile in Iowa "was unrelated to [defendant's] allegedly tortious conduct, and consequently, Iowa played a fortuitous role in the alleged interference with [plaintiff's] contractual rights." *Id.*

This case presents the inverse scenario. While Shams's residence in Iowa is perhaps dubious, it is clear Hassan was aware of the location of the bank from which she was allegedly misappropriating Shams's funds. While Hassan might have preferred the bank account to be located in Maryland, this preference was irrelevant under the *Calder* test so long as Iowa was the focal point of Hassan's alleged tort. *Calder* illustrates this conclusion: The harm in that case was directed by the defendant to the forum state. *See Calder*, 465 U.S. at 788–89, 104 S. Ct. at 1486–87, 79 L. Ed. 2d at 812 (describing Calder's allegedly libelous story about Jones and its impact on her in California). Likewise, Hassan knew the bank account was in Iowa, and her alleged acts made Iowa the focal point of her alleged tort. Unlike a case of negligence or ordinary breach of contract, this case allegedly involved the intentional misappropriation of monies known to be in an Iowa bank account. The bank account was the target of the alleged wrong in the case.

Turning to the third prong of the *Calder* test, the legal injury in a conversion occurs where the conversion takes place. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir. 1999). Thus, wrongful depletion of accounts located in one place occurs in that place. *Id.*; *see also Wenz v. Memery Crystal*, 55 F.3d 1503, 1507–08 (10th Cir. 1995) (holding conversion of funds in a London bank account by London-based tortfeasors occurred in London). It is true that money is increasingly fungible, and an injury that occurs in one bank account does not mean that the harm is not felt elsewhere. In other words, the economic harm

Shams suffered could be viewed as primarily occurring wherever he was located at the moment. But, the point of our formulation of the *Calder* test was to avoid this type of reasoning, though from the opposite perspective. As we noted in *Capital Promotions*,

> basing jurisdiction solely on the fact the plaintiff felt harm in the forum jurisdiction would make jurisdiction "depend on a *plaintiff's* decision about where to establish residence," rather than "grounding jurisdiction on a defendant's decision to 'purposely avail[] itself of the privilege of conducting activities within the forum [s]tate,' or on a defendant's activities "expressly aimed" at the forum state."

756 N.W.2d at 836 (quoting *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 625–26 (4th Cir. 1997)) (alterations in original).

The injury in this case occurred almost totally in Iowa. Not only were funds removed from a bank account located in Iowa, but two of the three children who were to benefit from the funds in the account were residents of Iowa. Of course, the more remote effects of the conversion may *also* have occurred outside of Iowa. Some of the harm may have caused injury in Arizona because Hassan had allegedly promised to pay bills for one of the children in that state. Yet, our *Calder* test asks where the *primary* effect of the tortious act occurred. Thus, injuries occurring elsewhere will not deprive the forum state of personal jurisdiction when the primary effect of the tort occurred in the forum state.

Therefore, sufficient minimum contacts exist to justify the exercise of jurisdiction over Hassan. To defeat jurisdiction, Hassan must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477, 105 S. Ct. at 2185, 85 L. Ed. 2d at 544. As one court has explained,

> these compelling cases "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that

they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."

*Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (quoting *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)).

In reviewing the fairness factors identified in *World-Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S. Ct. at 564, 62 L. Ed. 2d at 498, we conclude the exercise of jurisdiction is reasonable. Some burden will undoubtedly fall on Hassan, but such a burden falls on all out-of-state defendants. *See Burstein v. State Bar of Cal.*, 693 F.2d 511, 522 (5th Cir. 1982) ("Unquestionably, it would be inconvenient for the Bar to litigate in Louisiana, but that is an aspect of every suit against a nonresident defendant."). Iowa's interest in adjudicating a dispute concerning a tort that incurred within its borders and Shams's interest in obtaining convenient relief outweigh any inconvenience to Hassan. *See Asahi Metal*, 480 U.S. at 114, 107 S. Ct. at 1033, 94 L. Ed. 2d at 105–06 ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."); *see also McGee*, 355 U.S. at 223, 78 S. Ct. at 201, 2 L. Ed. 2d at 226 ("It cannot be denied that [a state] has a manifest interest in providing effective means of redress for its residents . . . .").

Moreover, some, if not all, of the evidence in this case—bank records—will likely be in Des Moines. *See Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 480 (4th Cir. 1993) (holding jurisdiction in Maryland was unreasonable when most of the evidence and witnesses were located in Australia); *Domtar, Inc. v. Niagara Fire Ins. Co.*, 533 N.W.2d 25, 34 (Minn. 1995) (holding jurisdiction was

appropriate when the bulk of the relevant evidence was located in Minnesota). Because Hassan is the only defendant in this case, efficiency appears to be satisfied by exercise of jurisdiction in Iowa. *See Domtar, Inc.*, 533 N.W.2d at 34 (considering jurisdiction reasonable when all defendants can be brought before the court to avoid piecemeal litigation); *LaMarca v. Pak-Mor Mfg. Co.*, 735 N.E.2d 883, 889 (N.Y. 2000) (considering jurisdiction reasonable when all defendants can be brought before the court). Finally, the interest of furthering shared substantive social policies supports the exercise of jurisdiction. The exercise of jurisdiction over a nonresident in this case will serve to discourage nonresidents from converting bank funds.

Accordingly, the exercise of personal jurisdiction does not offend the Due Process Clause in this case. There were sufficient minimum contacts in Iowa. It is fair for Iowa to exercise personal jurisdiction.

### IV. Conclusion.

Hassan is subject to personal jurisdiction in Iowa under the *Calder* effects test based on the claim of an intentional tort in Iowa. Accordingly, we reverse the decision of the court of appeals and the district court. We remand the case for further proceedings.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT REVERSED; CASE REMANDED.**

All justices concur except Wiggins, J., who takes no part.